**Affirmed and Majority and Concurring Opinions filed August 13, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00388-CR

---

**ERNEST LEYBA, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

---

**On Appeal from the 183rd District Court
Harris County
Trial Court Cause No. 1287731**

---

## M A J O R I T Y   O P I N I O N

Appellant Ernest Leyba was convicted of first-degree murder and sentenced to a term of life imprisonment. On appeal, our review is limited to deciding whether the trial court abused its discretion by admitting evidence of Leyba's prior convictions. We affirm.

# I

Leyba was charged with the stabbing death of Brandon Tate. Because Leyba admitted to the stabbing in the proceedings below, the only issue for the trier of fact was whether he had acted in self-defense.

The prosecution's theory of the case was that Leyba killed Tate in the midst of a drug transaction. On the night of Tate's death, Leyba called Mikelis Jackson, his drug dealer, to arrange a large purchase of crack cocaine. Jackson agreed to the transaction over the phone, then drove to Leyba's hotel to finalize the deal. Tate accompanied Jackson for the ride.

Once they arrived at the hotel, Jackson and Tate remained in their vehicle, expecting to meet Leyba in the parking lot. Leyba came around the back of the car and "thumped" on the passenger side. Jackson instructed Leyba to climb into the backseat, but Leyba opened the front passenger door instead. Then, without provocation, Leyba stabbed Tate in his chest and leg. According to Jackson, Leyba also demanded that Jackson "break" himself, meaning that he needed to empty his pockets and surrender everything he had.

Leyba's version of the events differed significantly. After taking the stand in his own defense, Leyba testified that Jackson called him and made threatening statements regarding a debt. Leyba agreed to pay Jackson his money, and offered to meet Jackson outside his hotel room. Leyba testified that he presented the money to Tate on the passenger side of the car, anticipating that Tate would then tender it to Jackson. Tate declined to handle the money, however, so Leyba extended his arm farther inside the vehicle to deliver the money to Jackson directly. According to Leyba, Jackson then pulled him into the car and Tate held him down. Leyba testified that he somehow wrestled himself free, retrieved his knife, and stabbed Tate in the chest. He claimed the stabbing was necessary

because Jackson had a gun and he feared for his life. Jackson denied having a gun though, and no firearm was ever recovered from the scene.

## II

## A

In his first issue, Leyba argues that the trial court abused its discretion by allowing the State to impeach him with evidence of his prior convictions. The State elicited testimony concerning a number of extraneous offenses, including a 2008 conviction for assault, a 2005 conviction for burglary, a 1996 conviction for driving under the influence, a 1994 conviction for illegal possession of a weapon, and two 1988 convictions for armed robbery and illegal possession of a weapon. The State also questioned Leyba about two other convictions, one in 2005 for battery and the other in 1997 for resisting arrest, but Leyba denied these convictions and no judgments of conviction were ever introduced.

The admissibility of a prior conviction is determined by Rule 609 of the Texas Rules of Evidence. The pertinent text from this rule provides:

> **(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

> **(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect.

3

Tex. R. Evid. 609.

The time limit described in subdivision (b) represents a substantive departure from former article 38.29 of the Texas Code of Criminal Procedure, the statutory predecessor to Rule 609. *See Ex parte Menchaca*, 854 S.W.3d 128, 131 (Tex. Crim. App. 1993) (stating that article 38.29 is the predecessor to Rule 609). The Legislature repealed Article 38.29 effective September 1, 1986, when the rules of evidence, including Rule 609, first went into effect in criminal cases. Under Article 38.29, evidence that a witness had been charged with a criminal offense could not be used to impeach that witness unless a final conviction had resulted, or a suspended sentence had been given and had not been set aside, or the witness had been placed on probation and the period of probation had not expired.[1] Unlike Rule 609, Article 38.29 contained no express prohibition on convictions that were too remote.

Where the statute was silent, however, common-law rulings filled in. In cases decided before the adoption of the rules of evidence, the Court of Criminal Appeals held that a witness's credibility could be attacked with a prior conviction if the prior conviction was for a felony or a crime involving moral turpitude that was not "too remote." *McClendon v. State*, 509 S.W.2d 851, 855–57 (Tex. Crim.

---

[1] Article 38.29 provided as follows:

The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired. In trials of defendants under Article 36.09, it may be shown that the witness is presently charged with the same offense as the defendant at whose trial he appears as a witness.

4

App. 1974) (op. on reh'g); *Crisp v. State*, 470 S.W.2d 58, 59–60 (Tex. Crim. App. 1971). The Court of Criminal Appeals recognized that trial courts exercised great discretion when admitting evidence of prior convictions, and courts based their decisions on whether a conviction was too remote on the facts and circumstances of each case. *See McClendon*, 509 S.W.2d at 855–56; *Crisp*, 470 S.W.2d at 59.

Though it was not a hard and fast rule, courts generally determined that prior convictions were too remote if more than ten years had elapsed between the date of the witness's testimony and the later of the date the witness was convicted or the date the witness was released from any confinement imposed for that conviction. *See McClendon*, 509 S.W.2d at 855–57; *Penix v. State*, 488 S.W.2d 86, 88 (Tex. Crim. App. 1972); *Crisp*, 470 S.W.2d at 59–60. By following this guideline, courts acknowledged the idea that a witness is generally capable of reforming his character over a period of law-abiding conduct. But the guideline had one important exception: if there was evidence that the witness had failed to reform his character—for instance, by committing a subsequent felony or crime involving moral turpitude—then the taint of remoteness was destroyed and the witness could be impeached with evidence of the prior conviction. *See McClendon*, 509 S.W.2d at 855 ("[E]vidence of lack of reformation or subsequent conviction of another felony or misdemeanor involving moral turpitude causes the prior conviction not to be subject to the objection of remoteness."); *Crisp*, 470 S.W.2d at 59.

In recent years, several courts of appeals have applied the common-law exception, sometimes described as the "tacking doctrine," when performing a Rule 609 analysis. According to these courts, if a conviction is more than ten years old, it may be "tacked" onto a subsequent conviction for remoteness purposes, which then alters the legal standard governing its admission. *See Jackson v. State*, 50 S.W.3d 579, 591–92 (Tex. App.—Fort Worth 2001, pet. ref'd); *Rodriguez v. State*,

31 S.W.3d 359, 363 (Tex. App.—San Antonio 2000, pet. ref'd); *Hernandez v. State*, 976 S.W.2d 753, 755–56 (Tex. App.—Houston [1st Dist.]), *pet. ref'd*, 980 S.W.2d 652 (Tex. Crim. App. 1998).[2] *But see Hankins v. State*, 180 S.W.3d 177, 180 (Tex. App.—Austin 2005, pet. ref'd). Under this approach, if a subsequent conviction indicates "a lack of reformation," then the conviction more than ten years old may be analyzed under Rule 609(a)'s "outweighs" standard rather than Rule 609(b)'s "substantially outweighs" standard. *See Jackson*, 50 S.W.3d at 591–92; *Rodriguez*, 31 S.W.3d at 363; *Hernandez*, 976 S.W.2d at 755–56.

Not all courts continue to apply the tacking doctrine. In *Hankins v. State*, the Austin court of appeals reasoned that Rule 609 creates only two distinct categories of prior convictions: those more than ten years old, and those less than ten years old. *See Hankins v. State*, 180 S.W.3d 177, 180 (Tex. App.—Austin 2005, pet.

---

[2] *Hernandez*, decided by our sister court here in Houston, is the leading case on tacking. The Fort Worth and San Antonio courts of appeals have followed *Hernandez* in published opinions. *See Jackson*, 50 S.W.3d at 592; *Rodriguez*, 31 S.W.3d at 363. The Dallas, Amarillo, and Corpus Christi courts of appeals have also followed *Hernandez*, but only in unpublished opinions which have no precedential value. *See Bennett v. State*, No. 05-01-01056-CR, 2002 WL 31165162, at *5 (Tex. App.—Dallas Oct. 1, 2002, pet. ref'd) (not designated for publication); *Myers v. State*, No. 07-06-0424-CR, 2008 WL 4722974, at *3 (Tex. App.—Amarillo Oct. 28, 2008, no pet.) (mem. op., not designated for publication); *Erevia v. State*, No. 13-99-232-CR, 2000 WL 34410039, at *4 (Tex. App.—Corpus Christi Aug. 31, 2000, no pet.) (not designated for publication).

Our court has also applied the tacking doctrine in several unpublished decisions. *See West v. State*, No. 14-11-00204-CR, 2012 WL 1606239, at *8 (Tex. App.—Houston [14th Dist.] May 8, 2012, pet. ref'd) (mem. op., not designated for publication); *Adkins v. State*, No. 14-06-00402-CR, 2007 WL 2330795, at *2 (Tex. App.—Houston [14th Dist.] Aug. 16, 2007, no pet.) (mem. op., not designated for publication); *Virgil v. State*, No. 14-99-00214, 2001 WL 123990, at *1 (Tex. App.—Houston [14th Dist.] Feb. 15, 2001, pet. ref'd) (not designated for publication); *Wolt v. State*, No. 14-99-00524-CR, 2000 WL 1262530, at *6 n.4 (Tex. App.—Houston [14th Dist.] Sep. 7, 2000, pet. ref'd) (not designated for publication); *Virgil v. State*, No. 14-99-00214-CR, 2000 WL 729419, at *2 (Tex. App.—Houston [14th Dist.] June 8, 2000, pet. ref'd) (per curiam) (not designated for publication); *McBride v. State*, No. A14-88-00157-CR, 1989 WL 81326, *3 (Tex. App.—Houston [14th Dist.] July 20, 1989, no pet.) (not designated for publication). However, like the Dallas, Amarillo, and Corpus Christi cases, these cases have no precedential value because they have not been designated for publication. *See* Tex. R. App. P. 47.7(a).

ref'd). "Rule 609 does not include a third category of prior convictions codifying the [common-law] exception." *Id.* Because the rule permits no room for tacking, the Austin court of appeals determined that the admission of a prior conviction greater than ten years old is governed exclusively by Rule 609(b), which requires that the probative value of the conviction "substantially outweigh" its prejudicial effect. *Id*.

The courts that have applied the tacking doctrine to Rule 609 have not explained how this doctrine can be reconciled with the language of the rule. Rule 609 plainly provides that a conviction more than ten years old cannot be used to impeach a witness unless "the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b). Instead of looking to the rule itself, the courts applying the tacking doctrine to Rule 609 continue to rely on common-law cases that predate the adoption of the rules of evidence for use in criminal cases. *See Jackson*, 50 S.W.3d at 591–92; *Rodriguez,* 31 S.W.3d at 363; *Hernandez,* 976 S.W.2d at 755–56. These common-law cases are not on point because they were decided under the common law and are contrary to the unambiguous language of Rule 609. *See* Tex. R. Evid. 609; *Prince v. State*, 192 S.W.3d 49, 55 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (distinguishing common-law remoteness cases in context of Rule 404 analysis because they were decided before the adoption of rules of evidence in criminal cases effective September 1, 1986).

In the more than twenty-six years since the rules of evidence were adopted for use in criminal cases, the Court of Criminal Appeals has not applied the tacking doctrine in a single reported case. We agree with the Austin court of appeals that Rule 609 has supplanted the common-law exception and that under the rule's plain

meaning, tacking is no longer permitted. *See Hankins*, 180 S.W.3d at 180. Therefore, to the extent we must review convictions that are more than ten years old, we will apply the more rigorous standard under Rule 609(b). In other words, we will ask whether the trial court abused its discretion in determining, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances *substantially* outweighs its prejudicial effect. *See* Tex. R. Evid. 609(b); *Hankins*, 180 S.W.3d at 180.

B

Leyba presents the following complaints: (1) his 2008 conviction for assault is inadmissible because it is neither a felony nor a crime involving moral turpitude; (2) his pre-2000 convictions are inadmissible because they are too remote; and (3) his only non-remote felony, the 2005 conviction for burglary, is inadmissible because its probative value does not outweigh its prejudicial effect. We first consider whether these complaints have been preserved for appellate review.

Before a reviewing court may determine whether a trial court erred in the admission of evidence, the error must have been preserved by a proper objection and a ruling on that objection. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). A proper objection is one that is timely and specific. Tex. R. App. P. 33.1. Further, with two exceptions, a party must continue to object each time the inadmissible evidence is offered, or else the error is forfeited. *Geuder*, 115 S.W.3d at 13. The two exceptions require counsel to obtain either a running objection during trial or a ruling in a hearing outside the presence of the jury. *See* Tex. R. Evid. 103(a)(1); *Geuder*, 115 S.W.3d at 13.

In this case, the trial court conducted a hearing outside the jury's presence to discuss the admission of Leyba's prior convictions. During that hearing, defense

counsel raised an objection only as to the convictions predating the year 2000. He stated:

> There are nine different criminal convictions that are listed all out of the State of New Mexico. And three of them are within the past ten years, 2005, 2005 and 2008. The remainder are more than ten years old. And our position is that the convictions that are more than ten years old are not admissible.

The trial court overruled his objection. Thus, error was preserved on Leyba's second complaint.

During cross-examination, the prosecutor elicited testimony about Leyba's three most recent convictions. Defense counsel did not object to this testimony. Accordingly, error was not preserved on the admission of Leyba's 2008 conviction for assault and his 2005 conviction for burglary. With his first and third complaints forfeited, we limit our review to Leyba's pre-2000 convictions. We do not address the 1997 conviction for resisting arrest, however, because Leyba denied this conviction and the State offered no other evidence in support of it. *Cf. Bice v. State*, 642 S.W.2d 263, 266 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (concluding that the defendant was not impeached where she denied an alleged statement and the prosecution introduced no other evidence demonstrating the falsity of her response).

1

We begin with Leyba's 1996 conviction for driving under the influence of alcohol, which is the most recent conviction among Leyba's pre-2000 offenses. The State concedes that the trial court erred by admitting evidence of this conviction; the record suggests that the conviction was not a felony offense, and driving under the influence is not a crime involving moral turpitude. *See Shipman v. State*, 604 S.W.2d 182, 184 (Tex. Crim. App. [Panel Op.] 1980).

9

Assuming the trial court did err, its decision to admit this evidence is subject to a harm analysis for nonconstitutional error. Under this standard, error must be disregarded unless it affects a defendant's substantial rights. Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court should consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). An appellate court should also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to the defendant's claim. *Id.*

Considering the record as a whole, we hold that the trial court's error did not have a substantial and injurious effect or influence on the jury's verdict. Leyba was only briefly questioned about his conviction for driving under the influence. No other evidence was introduced regarding this conviction, and the prosecutor did not emphasize the conviction during closing argument.

Furthermore, the State presented a strong case that Leyba was guilty of the charged offense. The evidence was undisputed that Leyba caused Tate's death: Jackson testified about the stabbing, and Leyba admitted to the act. The record also cast doubt on Leyba's claim of self-defense. The evidence showed, for example, that Leyba used his knife to puncture Jackson's tires, an act inconsistent with Leyba's claim that he considered Jackson a threat. Another witness at the scene

10

also testified that Leyba tried to run away and dispose of the murder weapon. The record additionally revealed that no firearms were ever recovered from the scene. Jackson even testified that if he had had a weapon, he would have used it against Leyba to defend himself. In light of this evidence and the fact that the prosecutor elicited testimony about more recent and serious offenses, it is not apparent that the jury placed any measurable significance on Leyba's conviction for driving under the influence of alcohol. We conclude that the trial court's error was harmless.

2

Leyba testified that he was convicted in 1994 for illegally possessing a weapon, a felony conviction for which he was sentenced to approximately two and a half years in prison. The date of Leyba's release preceded the time of trial by more than ten years. Therefore, evidence of the prior conviction was inadmissible unless the trial court "determine[d], in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighed its prejudicial effect." *See* Tex. R. Evid. 609(b); *Hankins*, 180 S.W.3d at 180.

We consider the following set of factors when weighing the probative value of a conviction against its prejudicial effect: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity of the prior conviction to the charged offense; (4) the importance of the witness's testimony; and (5) the importance of the witness's credibility. *See Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); *LaHood v. State*, 171 S.W.3d 613, 620 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). These factors are not exclusive, however, and they cannot be applied with "mathematical precision" because several factors

relevant to assessing probative value cut in different directions. *Theus*, 845 S.W.2d at 880.

The prosecution in this case did not offer any "specific facts and circumstances" beyond the date and the type of crime to justify the admission of Leyba's prior convictions. *See* Tex. R. Evid. 609(b). Thus, we are forced to rely on the barest of facts in our analysis. *See Hankins*, 180 S.W.3d at 181. In *Theus*, the Court of Criminal Appeals determined that convictions with the highest impeachment value tend to be crimes involving deception. *See Theus*, 845 S.W.2d at 881. Crimes of violence have less impeachment value because of their greater potential for prejudice. *Id.* In this case, the first factor is neutral. The record does not reveal the circumstances in which Leyba was convicted for illegally possessing a weapon, and mere possession by itself does not necessarily involve either deception or violence.

The second factor favors admissibility if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law. *Id.* The past crime was not recent in this case; the date of conviction preceded the date of the charged offense by more than fifteen years. However, the record also demonstrated that Leyba has failed to rehabilitate in recent years. In a short span of time, Leyba was convicted of both burglary and assault, the latter of which predated Tate's murder by only two years. This factor does not weigh greatly in favor of either admission or exclusion.

The third factor requires that the court explore the similarity between the past crime and the offense for which the defendant is now on trial. Evidence of the prior conviction is less likely to be admissible if the past and present offenses are similar; this is because a higher degree of similarity increases the danger that the jury would convict on the perception of a past pattern of conduct, rather than on

12

the facts of the charged offense. *Id.* The record here does not identify what type of weapon Leyba was convicted of illegally possessing. Furthermore, the record does not indicate that Leyba used the weapon in a violent or threatening manner, unlike in this case. This factor is neutral in our analysis.

Factors four and five are related because both depend on the nature of the defendant's defense and the means available to him of proving that defense. *Id.* In situations where a defendant presents an alibi defense and can call other witnesses, the defendant's credibility is not likely to be a critical issue. *Id.* By contrast, when the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's testimony and credibility increases. *Id.* As the importance of the defendant's credibility increases, so will the need to allow the State an opportunity to impeach the defendant's credibility. *Id.* Leyba called himself as the only defense witness in this case. Because his credibility was important, these final factors would support admission of the prior conviction.

After considering all five factors together, we are not convinced that the prosecutor satisfied her difficult burden under Rule 609(b). As we mentioned before, the prosecutor only established the date and type of the conviction. The prosecutor did not explain how the prior conviction had any probative value, or that this probative value was supported by specific facts and circumstances. Considering that Leyba did not deny using a weapon in the instant case, the probative value of this prior conviction appears to have been minimal. Because there is no indication that this value substantially outweighed its prejudicial effect, we hold that the trial court abused its discretion by allowing this evidence to be admitted.

We now consider whether the trial court's error resulted in harm. *See* Tex. R. App. P. 44.2(b). In the previous section, we were persuaded by the strong case

13

that was presented against Leyba when we found harmless error in the admission of another remote conviction. We were also persuaded by other weaknesses in Leyba's asserted claim of self-defense. Consistent with our prior analysis, we conclude that the trial court's error in admitting Leyba's weapon conviction did not have a substantial and injurious effect on the jury's verdict. The prosecutor did not emphasize this conviction during trial, and she only briefly mentioned it during closing argument. The prosecutor was also careful to instruct the jury, "You can't find [Leyba] guilty because he's done bad stuff before, but you can use those convictions to decide whether or not you think he's telling you the truth now." After reviewing the entire record, we are reasonably assured that the conviction had only a slight effect, at most, on the jury's determination of guilt. The trial court's error was therefore harmless. *See Johnson*, 967 S.W.2d at 417.

3

We turn next to Leyba's 1988 conviction for armed robbery, a felony offense for which Leyba was sentenced to seven years' confinement. Because Leyba's release for that conviction predated the charged offense by more than ten years, our analysis is again controlled by Rule 609(b) and the factors discussed in *Theus v. State*.

Beginning with the first factor, we cannot agree that the impeachment value of Leyba's armed robbery conviction was especially high. Although robbery, as a crime of theft, contains certain elements of deception, it also involves the threat or use of violence. *See Simpson v. State*, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Neither side introduced any specific details of the underlying offense. This factor does not weigh strongly in favor of either admission or exclusion. *See Davis v. State*, 259 S.W.3d 778, 782 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd) (stating that impeachment value was unclear

14

where prosecution did not introduce any details regarding prior robbery convictions).

The second factor is neutral for the same reasons discussed earlier: the conviction is not recent, but Leyba's subsequent history demonstrates a propensity for running afoul of the law.

The third factor favors exclusion because armed robbery and murder have certain similarities, at least on the facts of this record. Leyba used a knife in the present case, and presumably, a weapon was also involved in the earlier "armed" robbery. The two crimes are also similar because the evidence supported a finding that Leyba had attempted to rob Jackson of drugs during the course of Tate's murder. These similarities are prejudicial because they increase the risk that the jury would convict Leyba on a pattern of past conduct.

Although the final two factors support the State's position, when all five factors are weighed together, we conclude that the trial court abused its discretion by admitting evidence of the armed-robbery conviction. The prejudice associated with this conviction was high because it was similar to the charged offense, and more so than any of Leyba's more recent convictions. The prosecution did not adduce any specific facts or circumstances showing how the conviction's probative value substantially outweighed its prejudicial effect. We must therefore determine whether the admission of this evidence was harmful.

Again, we look at the entire record in our evaluation of harm. Viewing the record as a whole, the evidence seemed to greatly undermine Leyba's claim of self-defense. Jackson testified that Leyba stabbed Tate while Tate was sitting in a car. Leyba did not testify that Tate was armed or that he posed a direct and imminent threat. Leyba claimed instead that Jackson had a gun; however, no firearm was ever found, and the evidence further demonstrated that Jackson, unlike

Leyba, had not attempted to flee the scene and dispose of his weapon. The record does not indicate that the armed-robbery conviction had a substantial and injurious effect or influence on the jury's verdict.

4

Finally, we examine the trial court's admission of Leyba's 1988 conviction for illegally possessing a weapon. Our analysis does not different significantly from our review of Leyba's more recent conviction for the same offense. As we stated earlier, the first three *Theus* factors are all neutral. The impeachment value is unclear because merely possessing a weapon does not suggest either a propensity for deception or violence. The conviction is quite remote, but its remoteness is balanced by Leyba's failure to reform his behavior in the interim. The similarity between the two crimes is also unclear because the record does not show what type of weapon Leyba possessed, or that he used the weapon in a manner comparable to that demonstrated in this case. The fourth and fifth factors weigh in favor of admission because Leyba made his credibility the primary defensive issue in the case.

As the proponent of the evidence, the prosecution assumed the burden of adducing specific facts and circumstances to show that the probative value of the prior conviction substantially outweighed its prejudicial effect. However, the prosecution adduced virtually no facts about this conviction, and its value to the case does not strike us as great. We conclude that the trial court erred by admitting this evidence, but for the same reasons discussed in Section II.B.2, *supra*, we hold that the error was ultimately harmless.

Leyba has not specifically argued that the trial court's errors, when viewed cumulatively, affected his substantial rights. Nevertheless, we are mindful that errors may be harmful in their cumulative effect, even if harmless when separately considered. *See Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988); *Linney v. State*, — S.W.3d —, No. 14-11-01015-CR, 2013 WL 1897125, at *13 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. filed). Accordingly, we address the cumulative harm of the trial court's errors.

The prosecutor elicited testimony about Leyba's prior convictions in rapid succession, without discussing any of their underlying facts. Leyba's conviction for armed robbery was clearly the most serious of his pre-2000 convictions, but the prosecutor did not draw specific attention to this offense, or seek to emphasize it over any of the others. The prosecutor's objective was plainly to cast Leyba in an unfavorable light, so as to make him appear less credible. We doubt that the prosecutor had a substantial need to impeach Leyba with so many remote convictions; the prosecution's case was already quite strong, and at least two recent, non-remote convictions were available for impeachment purposes. An argument could even be made that Leyba's most recent convictions, which were not challenged at trial, diluted the impact of the more remote offenses.

In light of the entire record, we cannot determine that the prosecutor elicited this inadmissible evidence for inflammatory purposes, or that the jury was affected in such a way as to deprive Leyba of a fair and impartial trial. We therefore reject any contention that the cumulative effect of the trial court's errors was harmful. *Cf. Stahl*, 749 S.W.2d at 830, 832 (finding harm from the cumulative effect of error where there was evidence that the prosecutor orchestrated an emotional outburst

during trial, then exacerbated that outburst by making repeated references to it during closing argument). Leyba's first issue is overruled.

## III

In his second issue, Leyba argues that the trial court abused its discretion by excluding evidence of Tate's criminal history. During a hearing on a motion in limine, it was revealed that Tate had a narcotics charge pending at the time of his death. Leyba sought to introduce evidence of this charge at trial because it demonstrated Tate's involvement in the illegal drug trade. In his brief, Leyba contends this evidence was admissible because it suggested that Tate may have been the first aggressor on the night of the murder. *See* Tex. R. Evid. 404.

The trial court's decision to exclude evidence in a pretrial hearing generally preserves nothing for appeal. *See Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998); *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975) (noting that rulings on a motion in limine are preliminary in nature and subject to the trial court's reconsideration during the trial). To preserve error regarding the exclusion of evidence, the defendant must offer the evidence at trial and obtain an adverse ruling from the trial court. *See Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007). After obtaining an adverse ruling, the defendant must make an offer of proof conveying the substance of the proffered evidence so that the reviewing court may determine whether the exclusion was erroneous or harmful. *See* Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1. The proof may be offered informally, or through a formal bill of exceptions. *See Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993) ("An informal bill will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show."). The failure to perform any of these requirements results in forfeiture of an appellate complaint. *See Warner*, 969 S.W.2d at 2.

During the pretrial hearing, the trial court granted a motion in limine requiring, among other things, that the parties approach before introducing any evidence of a witness's criminal history. During the same hearing, defense counsel indicated that he would seek to discuss Tate's pending charge for possession of a controlled substance. The trial judge effectively excluded this evidence, stating, "I don't expect . . . that you would go into that." Leyba did not object to this statement or request a specific ruling regarding the admissibility of Tate's criminal history. Furthermore, Leyba never attempted to introduce evidence of Tate's pending charge during the trial on the merits. Thus, Leyba never received an adverse ruling from the trial court, and he never made an offer of proof. Leyba failed to preserve error. We overrule Leyba's second issue.

* * *

Having overruled Leyba's two issues, we affirm the judgment of the trial court.

/s/     Jeffrey V. Brown
           Justice

Panel consists of Justices Frost, Brown, and Donovan. (Frost, J., concurring). Publish — Tex. R. App. P. 47.2(b).