ACCEPTED
04-13-00858-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/11/2015 9:29:28 AM
KEITH HOTTLE
CLERK

**NO. 04-13-00858-CR**

IN THE COURT OF APPEALS FOR

THE FOURTH SUPREME JUDICIAL

DISTRICT OF TEXAS

AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
6/11/2015 9:29:28 AM
KEITH E. HOTTLE
Clerk

---

**WESLEY ALLEN DOTSON v. THE STATE OF TEXAS**

---

Appeal from Cause Number 13-01-00015-CRK from the 81st
Judicial District Court of Karnes County
Hon. Bert Richardson, Judge Presiding (by assignment)

---

**APPELLANT'S BRIEF**

---

STATE COUNSEL FOR OFFENDERS
APPELLATE SECTION

Nicholas Mensch
State Bar of Texas No. 24070262
P.O. Box 4005
Huntsville, Texas 77342-4005
(936) 437-5252
(936) 437-5279 (fax)
nicholas.mensch@tdcj.texas.gov

Attorney for Appellant

**ORAL ARGUMENT NOT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANT:**
Wesley Allen Dotson, TDCJ# 01367630

**TRIAL COUNSEL:**
Nancy Byrd Bunin[1]
State Bar of Texas No. 03561500
Karen Kay Suggs
State Bar of Texas No. 00786270
State Counsel for Offenders
P.O. Box 4005; Huntsville, Texas 77342
(936) 521-6700/(936) 521-6721 fax

**PREVIOUS APPELLATE COUNSEL:**
Sara T. Tat[2]
State Bar of Texas No. 24082020
State Counsel for Offenders
P.O. Box 4005; Huntsville, Texas 77342
(936) 437-5250/(936) 437-5279 (fax)

**APPELLATE COUNSEL:**
Nicholas Mensch
State Bar of Texas No. 24070262
State Counsel for Offenders
P.O. Box 4005; Huntsville, Texas 77340
(936) 437-5252/(936) 437-5279 fax

---

[1] At the time of trial, Mrs. Bunin was employed by State Counsel for Offenders. She has since left the office. Her current work address is: Habern, O'Neil & Associates, P.O. Box 8930, Huntsville, TX 77340, (936) 435-1380.

[2] Ms. Tat was employed by State Counsel for Offenders at the time of Appellant's original brief in this Court. She has since left the office and now resides in Florida.

**APPELLEE:**
THE STATE OF TEXAS

**TRIAL COUNSEL:**
Alfred Hernandez
State Bar of Texas No. 09514900
Special Prosecution Unit
P.O. Box 65042, San Antonio, Texas 78265
(210) 294-0525

**APPELLATE COUNSEL:**
Melinda Mayo Fletcher
State Bar of Texas No. 18403630
Special Prosecution Unit
P.O. Box 1744; Amarillo, Texas 79105
(806) 367-9407/(866) 923-9253 fax

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ................................................................. ii

INDEX OF AUTHORITIES ........................................................................... v

STATEMENT OF THE CASE ......................................................................... 2

STATEMENT REGARDING ORAL ARGUMENT ............................................... 3

ISSUE PRESENTED ..................................................................................... 3

    Whether the trial court committed reversible error by permitting the State
    to impeach the testimony of defense witness German Rodriguez with his
    prior felony convictions? ..................................................................... 9

STATEMENT OF FACTS ............................................................................. 3

SUMMARY OF THE ARGUMENT ................................................................. 8

ARGUMENT .............................................................................................. 9

PRAYER ................................................................................................... 28

CERTIFICATE OF SERVICE ....................................................................... 29

CERTIFICATE OF COMPLIANCE ................................................................ 29

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. State*,
 740 S.W.2d 749 (Tex. Crim. App. 1987) ................................................. 25-26

*Battles v. State*,
 No. 11-05-00166-CR, 2006 Tex. App. LEXIS 3117 (Tex. App.—Eastland 2006, no pet.) (mem. op.) ........................................................................25

*Bello v. State*,
 No. 05-14-00284-CR, 2015 Tex. App. LEXIS 5006 (Tex. App.—Dallas May 15, 2015, no pet. h.) (mem. op.) ..........................................................13

*Butler v. State,*
 890 S.W.2d 951 (Tex. App.—Waco 1995, pet. ref'd)..................................12

*Brown v. State,*
 880 S.W.2d 249 (Tex. App.—El Paso 1994, no pet.). ........................... 12-13

*Dale v. State*,
 90 S.W.3d 826 (Tex. App.—San Antonio 2002, pet. ref'd).........................12

*Deleon v. State*,
 126 S.W.3d 210 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) .. 14, 17, 20, 22, 24

*Dotson v. State*,
 No. 04-13-00858-CR, 2014 Tex. App. LEXIS 10114 (Tex. App.—San Antonio 2014, pet. granted) (mem. op.) .......................................................2

*Dotson v. State*,
 PD-1374-14 (Tex. Crim. App. April 15, 2015) (per curiam) (not designated for publication) ...............................................................................................2

*Duarte v. State,*

No. 01-10-00885-CR, 2012 Tex. App. LEXIS 599 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (mem. op.) ................................................. 13, 15

*Hankins v. State*,
180 S.W.3d 177 (Tex. App.—Austin 2005, pet. ref'd).. 11, 14, 17, 19, 21, 24

*Hernandez v. State*,
976 S.W.2d 753 (Tex. App.—Houston [1st Dist.], pet. ref'd) ................ 12, 25

*Jones-Jackson v. State*,
443 S.W.3d 400 (Tex. App.—Eastland 2014, no pet.) .................................13

*Kng v. State,*
953 S.W.2d 266 (Tex. Crim. App. 1997) ............................................... 25, 27

*Leyba v. State*,
416 S.W.3d 563 (Tex. App.—Houston [14th Dist.] 2013, pet. dism'd) ... 11, 12, 15, 17, 21, 24

*Meadows v. State*,
455 S.W.3d 166 (Tex. Crim. App. 2015) .................................... 3, 10, 11, 12

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1990) .....................................................10

*Morris v. State*,
67 S.W.3d 257 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ...................10

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2001) .......................................................25

*Pierre v. State*,
2 S.W.3d 439 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) ..................15

*Polk v. State*,
865 S.W.2d 627 (Tex. App.—Fort Worth 1993, pet. ref'd) ..........................13

*Stahl v. State*,
749 S.W.2d 826 (Tex. Crim. App. 1988) .....................................................25

*Theus v. State*,
  845 S.W.2d 874 (Tex. Crim. App. 1992) .......................... 10-15, 17-19, 21-23

*Woodall v. State,*
  77 S.W.3d 388 (Tex. App.—Fort Worth 2002, pet. ref'd.) ...........................15

**Rules**

Texas Rules of Appellate Procedure 44.2(b) ...........................................................25

Texas Rules of Evidence Rule 609 .........................................................................9

Texas Rules of Evidence Rule 609(a)........................................... 9-12, 17, 21, 22, 24

Texas Rules of Evidence Rule 609(b) ............................................. 8-13, 17, 18, 21

## NO. 04-13-00858-CR

## IN THE COURT OF APPEALS FOR

## THE FOURTH SUPREME JUDICIAL

## DISTRICT OF TEXAS

## AT SAN ANTONIO, TEXAS

---

## WESLEY ALLEN DOTSON v. THE STATE OF TEXAS

---

Appeal from Cause Number 13-01-00015-CRK from the 81st
Judicial District Court of Karnes County
Hon. Bert Richardson, Judge Presiding (by assignment)

---

## APPELLANT'S BRIEF

---

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

COMES NOW WESLEY ALLEN DOTSON, Appellant in cause number 04-13-00858-CR, and submits this brief in accordance with the Texas Rules of Appellate Procedure and in support of his request for reversal of the trial court's final judgment.

1

## STATEMENT OF THE CASE

On January 29, 2013, a Karnes County grand jury returned an indictment charging Appellant with the offense of Aggravated Assault of a Public Servant alleged to have occurred on or about January 26, 2012. (1 C.R. at 1-2). On August 29, 2013, a jury found Appellant guilty as charged in the indictment and assessed his punishment at 50 years' confinement in the Texas Department of Criminal Justice ("TDCJ") and a fine of $10,000. (5 R.R. at 5, 41); (1 Supp. C.R. at 4-5, 15). That same day, the trial court adjudicated guilt and imposed sentence in accordance with the jury's verdict. (5 R.R. at 46); (1 C.R. at 650-51). The trial court certified that this criminal case "is a not plea-bargain case, and the defendant has the right of appeal." (5 R.R. at 46); (1 C.R. at 642). On September 11, 2013, Appellant timely filed a motion for new trial that was denied by operation of law. (1 C.R. at 674-76). Thereafter, on October 31, 2013, Appellant timely filed his notice of appeal. (1 C.R. at 681-82).

On September 10, 2014, this Court affirmed Appellant's conviction and sentence. *Dotson v. State*, No. 04-13-00858-CR, 2014 Tex. App. LEXIS 10114 (Tex. App.—San Antonio 2014, pet. granted) (mem. op.). Thereafter, on October 10, 2014, Appellant timely filed a Petition for Discretionary Review ("PDR") in the Court of Criminal Appeals. *Dotson v. State*, PD-1374-14 (Tex. Crim. App. April 15, 2015)

(per curiam) (not designated for publication). On April 15, 2015, the Court of Criminal Appeals granted Appellant's PDR and vacated and remanded this case back to this Court in light of *Meadows v. State*, 455 S.W.3d 166 (Tex. Crim. App. 2015).

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument on the basis that the facts and the legal arguments are adequately presented in this brief and in the record. Moreover, the decisional process would not be significantly aided by oral argument

## ISSUE PRESENTED

Whether the trial court committed reversible error by permitting the State to impeach the testimony of defense witness German Rodriguez with his prior felony convictions?

## STATEMENT OF FACTS

On January 26, 2012, Gonzalo Martinez was performing the duties of a uniformed correctional officer at the John B. Connally Unit located in Karnes County, Texas. (3 R.R. at 48-50, 106-07). At approximately 10:30 a.m., while Appellant and his cellmate were lounging in the dayroom, Martinez conducted a random search of their cell (no. 12) for contraband. (3 R.R. at 54-57, 109-10.) Martinez confiscated several contraband items. (3 R.R. at 57-59). Appellant and his cellmate exited the dayroom and approached Martinez. (3 R.R. at 57). Appellant

3

was irate, and Martinez cautioned him that his anger and his threat to "kick [Martinez's] ass could result in unfavorable consequences. (3 R.R. at 57-62). Martinez ordered Appellant and his cellmate to go downstairs and return to the dayroom. (3 R.R. at 62-63). As Martinez was descending the stairs to turn in the contraband items, Appellant and his cellmate again accosted Martinez in the stairwell. (3 R.R. at 68-71). While his cellmate looked on, Appellant began swinging his fists at Martinez. (3 R.R. at 70-73). Martinez grabbed Appellant's arm, fell on top of Martinez, and together they slid down the stairs to the dayroom floor. (3 R.R. at 74). Appellant landed on top of Martinez and attempted to gouge Martinez's eyes out. (3 R.R. at 75-81). Additional staff arrived at the scene of the altercation. (3 R.R. at 81-84). After Appellant was restrained, Martinez was escorted to the unit infirmary for medical treatment and then transported to an area hospital for ophthalmological surgery and other medical treatment. (3 R.R. at 85-89). Martinez testified that he experienced partial blindness for several days and suffered a left shoulder injury. (3 R.R. at 90-93). He returned to work in the early part of September 2012 and was assigned to light duty for 12 weeks. (3 R.R. at 94-96).

Following the State's case, Appellant's first witness, inmate German Rodriguez, took the stand to testify about what he saw occur between Appellant and Officer Martinez. (4 R.R. at 75-83). On direct examination, Rodriguez testified that he was sitting on a table facing to his cell, the stairs, and the television as he was

4

waiting for the officers to do in-and-outs when he heard a bunch of noise and turned around. (4 R.R. at 77-78). He saw Officer Martinez yelling something to Appellant, but he couldn't make out the words. (4 R.R. at 78). Appellant was not yelling. *Id*. Rodriguez then went into his cell, but he heard "a lot of noise like somebody was hitting metal," and went to the stairs near his cell. (4 R.R. at 78-79). When he got to the stairs he saw Appellant and Officer Martinez "standing on the middle of the stairs just before the landing…struggling to each other, like wrestling." (4 R.R. at 79). Rodriguez later described this as "grabbing each other's hands, pushing like that. Like wrestlers on TV, when they grab the hands like that, they were doing that." (4 R.R. at 83). Appellant and Officer Martinez then "fell down – both of them fell down to the bottom of the stairs and they came sliding down all the way down until they came to the bottom of the floor – to the concrete floor." *Id*. Appellant landed on top of Officer Martinez and Appellant tried to get up, but that was when additional officers came. (4 R.R. at 79-80). Rodriguez stated Appellant did not strike Officer Martinez. (4 R.R. at 101).

During Rodriguez's recross-examination, the State raised the subject of Rodriguez's prior convictions: an aggravated assault against a public servant, an attempted murder, and an aggravated assault. (4 R.R. at 90-100). After both parties approached the bench, Appellant's attorney made objections to the improper impeachment evidence based on Rule 609 of the Texas Rules of Evidence. (4 R.R.

at 91-97). Appellant's attorney pointed out that Rodriguez's convictions occurred in 1984, 1986, and 1999 and were "extremely remote." (4 R.R. at 93). She also argued that the "prejudicial effect outweighs the probative value given that this case [involves] an alleged offense against law enforcement," because "the jury may tend to see that […the] birds of a feather flock together and that they will make assumptions about the guilt" of Appellant based on Rodriguez's priors. (4 R.R. at 97.) Over Appellant's objections, the trial court allowed testimony of Rodriguez's prior convictions into evidence. (4 R.R. at 95-98.) The basis of the trial court's ruling was the tacking doctrine. (4 R.R. at 91-98). The State went on to ask Rodriguez whether it was true that he had no great love for law enforcement before going over his prior convictions. (4 R.R. 99-100).

The defense also called two other witnesses, Walter Rice and Bill Cason. (4 R.R. at 103-136). Rice testified that on the morning before the incident between Appellant and Officer Martinez took place, Appellant's cell was shaken down and Appellant and Officer Martinez had a few words before chow. (4 R.R. at 106). Rice believed that Appellant had apparently left his meal card in his cell and Officer Martinez would not let him get it. *Id*. Officer Martinez later shook Appellant's cell again, and they started to argue as they walked up the run. (4 R.R. at 106-107). Officer Martinez was shouting that Appellant was a child molester and all Appellant does is talk. (4 R.R. at 106). He couldn't hear what Appellant was saying. (4 R.R. at

6

110). A few minutes later, Rice saw both men rolling down the stairs. *Id.* He described them as not really fighting, but rolling/wrestling with each other. *Id.* He didn't see any punches thrown. (4 R.R. at 113). Officer Martinez hit his head against the stairs as him and Appellant fell down them. *Id.* Other officers came and starting spraying Appellant with gas afterwards. *Id.*

Cason testified that he was on the bench that has a view of the dayroom talking to another inmate on the date of the incident. (4 R.R. at 121). They saw Appellant and Officer Martinez arguing in front of 12 cell. (4 R.R. at 122). Cason believed that the two were arguing "over Martinez's refusal to let old man Wes back into his cell to get his meal card earlier that day." *Id.* According to Cason, Appellant walked away and Officer Martinez followed him screaming obscenities at him towards the stairs. (4 R.R. at 122-123). When Appellant got to the bottom of the stairs, Martinez yelled "You don't have the balls to do anything about it and that's when the altercation happened on the stairs." (4 R.R. at 123). Appellant started the altercation. (4 R.R. at 130). Cason also described them as more like wrestling; "one grabs the other and the other grabs the other and they kind of tussle." (4 R.R. at 133). He also testified he saw no punches thrown. *Id.* Martinez fell down the stairs on his back. (4 R.R. at 134).

Rodriguez, Rice, and Cason were the only witness called on behalf of the defense as Appellant elected not to testify. In describing these witnesses, the State commented during closing argument:

> Your common sense tell you who to believe and who not to believe. You heard from her three witnesses. You heard from a guy convicted of capital murder, ag robberies. You had one guy who had murder, ag robbery, ag assault, and a couple of other ones he was going so fast I couldn't even write them down.
>
> You heard from another guy who had also some horrible offenses. Let's see, what was his last one here? Oh, yeah, Mr. Cason, murder, ag assault with a deadly weapon, ag assault with a deadly weapon. Every one of them told you a story that made no sense.

(4 R.R. at 212).

## SUMMARY OF THE ARGUMENT

**Whether the trial court committed reversible error by permitting the State to impeach the testimony of defense witness German Rodriguez with his prior felony convictions?**

The trial court erred by allowing the State to question German Rodriguez regarding his prior felony convictions: a 1984 attempted murder, a 1986 aggravated assault, and a 1999 aggravated assault on a public servant. The 1984 and 1986 convictions were outside the ten-year window as outlined by Rule 609(b) of the Texas Rules of Evidence. The trial court should have only admitted these two convictions if it found that the probative value *substantially* outweighed the

8

prejudicial effect based on specific facts and circumstances. While the 1999 conviction was less than ten years old, based upon the estimated release date, the trial court should have considered whether its probative value outweighed its prejudicial effect. Instead, the trial court automatically allowed all three convictions to be admitted by utilizing the tacking doctrine. The State failed in meeting its burden to prove the admissibility of the 1984 and 1986 convictions under Rule 609(b) and the 1999 conviction under 609(a). It was an abuse of discretion for the trial court to admit Rodriguez's prior convictions and its errors had a substantial and injurious influence on the jury's verdict.

## ARGUMENT

**Whether the trial court committed reversible error by permitting the State to impeach the testimony of defense witness German Rodriguez with his prior felony convictions?**

Rule 609 regulates the admissibility of prior convictions offered to impeach the credibility of a witness:

> **(a)** **General rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

9

**(b)** **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Evidence of a conviction less than ten years old is admissible if the trial court finds that its probative value outweighs its prejudicial effect. Tex. R. Evid. 609(a). Rule 609(b) limits the admissibility of "stale" convictions. If a conviction is more than ten years old, it is presumptively inadmissible unless a court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, *substantially outweighs* its prejudicial effect. Tex. R. Evid. 609(b) (emphasis added); See also *Meadows v. State*, 455 S.W.3d 166 (Tex. Crim. App. 2015).

A trial court's admission of evidence is reviewed under a clear abuse of discretion standard. *Morris v. State*, 67 S.W.3d 257, 262 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Although a trial court is allowed wide discretion, "[i]f its decision to admit a prior conviction lies outside the zone of reasonable disagreement, an appellate court should not hesitate to reverse the trial court's determination." *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992) (quoting *Montgomery v. State*, 810 S.W.2d 372, 387 n.2 (Tex. Crim. App. 1990)). Further, a trial court has

10

to find that the proponent of the evidence has met its burden in demonstrating admissibility. *Theus*, 845 S.W.2d at 880. The State bore the burden of demonstrating the admissibility of Rodriguez's prior convictions as they were the proponent of the evidence. In the case at bar, the trial court used the tacking doctrine[3] to automatically admit Rodriguez's prior felony convictions. (4 R.R. at 90-98). Prior to hearing any of the State's evidence regarding the dates or details of Rodriguez's convictions, the trial court stated that "obviously [the State] can get into all the prior convictions." (4 R.R. at 92). Although trial courts are not required to conduct a detailed balancing test on the record, it "constitutes the better practice" to "enunciate[…] not only whether the probative value of a conviction outweighs [or substantially outweighs] its prejudicial effect, but also the rationale behind such a determination." *Theus*, 845 S.W.2d at 880. This decision by the trial court is void of any balancing test or analysis imposed by both Rule 609(a) and 609(b), despite the trial court's reading of Rule 609 into the record. (4 R.R. at 98).

---

[3]  The tacking doctrine "allowed the trial court the discretion to admit a remote conviction if the witness demonstrated a lack of reformation by committing a subsequent conviction for a felony or a misdemeanor involving moral turpitude." *Hankins v. State*, 180 S.W.3d 177, 179 (Tex. App.—Austin 2005, pet. ref'd). "Under this approach, if a subsequent conviction indicates "a lack of reformation," then the conviction more than ten years old may be analyzed under Rule 609(a)'s "outweighs" standard rather than Rule 609(b)'s "substantially outweighs" standard." *Leyba v. State*, 416 S.W.3d 563, 568 (Tex. App.—Houston [14th Dist.] 2013, pet. dism'd.). By using the tacking doctrine, trial courts avoided the stricter balancing test of Rule 609(b) and utilized the lesser test of 609(a), which favors admissibility in admitting remote convictions. *Id.*

Recently, the Court of Criminal Appeals held "that the unambiguous plain language of [Rule 609(b)] supplants the common-law tacking doctrine." *Meadows*, 455 S.W.3d at 169. Furthermore, the Court held "[i]n equally unambiguous plain language, Rule 609(b) limits Rule 609(a) by providing that evidence of a prior conviction is inadmissible if more than ten years has elapsed from the confinement imposed for that conviction 'unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.'" *Meadows*, 455 S.W.3d at 170. "In deciding whether, in the interests of justice, the probative value of a remote conviction substantially outweighs its prejudicial effect, a court may consider all relevant specific facts and circumstance, including whether intervening convictions dilute the prejudice of that remote conviction." *Meadows*, 455 S.W.3d at 169. Although this Court has stated in *Dale v. State*, 90 S.W.3d. 826 (Tex. App.— San Antonio 2002, pet ref'd), "in instances in which remoteness is an issue, we look exclusively to the strictures of Rule 609(b), not to the Theus factors," Appellant contends that the non-exclusive factors outlined in *Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992) would be appropriate in analyzing Appellant's prior convictions under Rule 609(b).[4] Those non-exclusive factors are: (1) the

---

[4] The *Theus* factors are meant to guide a court in assessing the probative value and prejudicial effect of a conviction. *Theus*, 845 S.W. 2d at 880. Tex. R. Evid. 609(a) and (b) both require this

12

impeachment value of the prior crimes; (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the witness' testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W. 2d at 880.

A. Rodriguez's 1984 attempted murder conviction.

Rodriguez testified that he was convicted in 1984 for attempted murder and was sentenced to four years in prison. (4 R.R. at 92-93). The date of Rodriguez's release is assumed, as the State did not provide a release date for this conviction, to have preceded the time of trial by more than ten years.[5] Evidence of this conviction

---

assessment. The difference between the two subsections is the degree that the probative value must outweigh the prejudicial effect; the "admissibility of a remote conviction requires the proponent to meet a higher burden." *Hernandez v. State*, 976 S.W.2d 753, 762 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (Taft, J., dissenting). Because Rule 609(b), like Rule 609(a), requires courts to assess probative value and prejudicial effect; it is thus acceptable to use the *Theus* factors for that purpose in the Rule 609(b) context, as long as the trial court then weighs the results of the *Theus* factors using Rule 609(b)'s "substantially outweighs" standard.

For cases that have used *Theus* in the context of Rule 609(b), see *Leyba v. State*, 416 S.W.3d 563 (Tex. App. – Houston [14th Dist.] 2013, pet. dism'd.); *Butler v. State*, 890 S.W.2d 951, 954-55 (Tex. App.—Waco 1995, pet. ref'd); *Brown v. State*, 880 S.W.2d 249, 253-254 (Tex. App.—El Paso 1994, no pet.); *Polk v. State*, 865 S.W.2d 627, 630-31 (Tex. App.—Fort Worth 1993, pet. ref'd); *Jones-Jackson v. State*, 443 S.W.3d 400 (Tex. App.—Eastland 2014, no pet.); *Bello v. State*, No. 05-14-00284-CR, 2015 Tex. App. LEXIS 5006 (Tex. App.—Dallas May 15, 2015, no pet. h.) (mem. op.); and *Duarte v. State*, No. 01-10-00885-CR, 2012 Tex. App. LEXIS 599 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (mem. op.).

[5] If Rodriguez was convicted in 1984 and served a four year sentence, then his release date would have been in 1988. 1988 precedes Appellant's trial commencement of August 26, 2013 by more than ten years. (2 R.R. 1).

was only admissible if the trial court found that the "probative value of the conviction supported by specific facts and circumstances *substantially* outweighed its prejudicial effect." Tex. R. Evid. 609(b) (emphasis added).

Under the first factor in *Theus*, the impeachment value of the conviction is given consideration. "The impeachment value of crimes that involve deception is higher than crimes that involve violence, and the latter have a higher potential for prejudice." *Theus*, 845 S.W. 2d at 881. Rodriguez's prior conviction for attempted murder is a crime of violence and does not involve untruthfulness or deception, nor is it a type of crime that would ordinarily weigh heavily against a witness' veracity. See *Deleon v. State*, 126 S.W.3d 210 (Tex. App.—Houston [1st. Dist.] 2003, pet. dism'd) (under first factor of *Theus*, two prior convictions for murder weighed against admissibility as they are crimes of violence.) More likely, this conviction would, because of its limited applicability regarding the credibility of a witness, simply paint the picture of the witness as being a bad person. Thus, the first factor weighs against admission. The second factor focuses on the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history. This factor favors "admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law." *Theus*, 845 S.W.2d at 881. While Rodriguez's subsequent convictions could increase probative value as they may suggest a lack of reformation, "[a] lack of reformation does not necessarily lead

to the conclusion that the probative value of a prior conviction substantially outweighs its prejudicial effect, but it may be considered within in the balancing process of Rule 609." *Hankins*, 180 S.W.3d at 181. The lapse between this conviction and Rodriguez's 1986 conviction was inside of the ten-year gap. This factor weighs in favor of admission. The third factor is the similarity between the past crime and the offense being prosecuted. "If…the past crime and the charged crime are similar, the third factor will militate against admission." *Theus*, 845 S.W.2d at 881. "The rationale behind this is that the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead on the facts of the charged offense." *Id*. See also *Pierre v. State*, 2 S.W.3d 439, 443 (Tex. App.—Houston [1st. Dist.] 1999, pet. ref'd). Here, Appellant was charged with aggravated assault of a public servant. Attempted murder and aggravated assault on a public servant are both crimes of violence. No facts were allowed regarding Rodriguez's conviction, rendering its admission extremely prejudicial and confusing for the jury. *Theus*, 845 S.W.2d at 881. Thus, this factor weighs significantly against admission.

The fourth and fifth factors, the importance of the testimony and the credibility of the witness, "are related because both depend on the nature of the defendant's defense and the means available to him of proving that defense." *Leyba*, 416 S.W.3d at 571. When a case involves only the testimony of the defendant and

that of the State's witnesses, the importance of the defendant's testimony and credibility increases. *Id*. "A witness's credibility is less important where other evidence or testimony corroborates the witness's testimony." *Duarte*, 2012 Tex. App. LEXIS 599 at *15, citing to *Woodall v. State*, 77 S.W.3d. 388, 396-397 (Tex. App.—Fort Worth 2002, pet. ref'd). In this case, the State called several witnesses and the Appellant, although he did not take the stand himself, also called several witnesses. (1 R.R. at 14-17). Two of Appellant's witnesses (Rice and Cason) testified about an incident that occurred on the morning of the altercation between Appellant and Officer Martinez. (4 R.R. at 106, 122). All three of Appellant's witnesses testified that they saw Appellant and Officer Martinez arguing before they got into their altercation at the stairs. (4 R.R. at 77-78, 106-107, 110, 122-123). Rodriguez went into his cell, but he heard "a lot of noise like somebody was hitting metal," and went to the stairs near his cell. (4 R.R. at 78-79). When he got to the stairs he saw Appellant and Officer Martinez "standing on the middle of the stairs just before the landing…struggling to each other, like wrestling." (4 R.R. at 79). Rodriguez testified that he was standing about four feet from the scene where Officer Martinez and Appellant landed on the bottom of the stairs, which appeared to be closer than Appellant's other witnesses. (4 R.R. at 79-80). All three described the incident as more like wrestling, and all three testified that Appellant did not strike Officer Martinez. (4 R.R. at 83, 101, 110, 113, 133). Collectively, Appellant's

16

witness were important, but Rodriguez was not the only defense witness in this case. Although Rodriguez testified to certain aspects of the incident that Appellant's other witnesses could not from what appears to be the better vantage point, much of what Rodriguez testified to was corroborated by Rice and Cason. Thus, the fourth and fifth factors are neutral. See *Deleon*, 126 S.W.3d at 215.

Two of the five *Theus* factors weigh against admission and two factors are neutral.[6] The prosecutor in this case did not explain how the prior conviction had any probative value, or that this probative value was supported by specific facts of circumstances," even though they bore the burden of doing so. *Leyba*, 416 S.W.3d at 572. The trial court's decision is void of any balancing test or analysis imposed by both Rule 609(a) and 609(b), despite the trial court's reading of Rule 609 into the record. (4 R.R. at 98). Rodriguez's prior conviction for attempted murder does not relate to his credibility and is a similar crime of violence for which Appellant was charged. Appellant's other witnesses also testified to similar aspects of the altercation with Officer Martinez, although Rodriguez arguably had the better vantage point of what happened at the stairs. Considering all of the *Theus* factors, the probative value of the conviction did not substantially outweigh its prejudicial

---

[6] The Court in *Theus* noted that"[t]he application of these factors to a particular case cannot be performed with mathematical precision because several of the factors relevant to assessing probative value themselves cut in different directions." *Theus*, 845 S.W.2d at 880.

effect. *See* Tex. R. Evid. 609(b). The trial court thus abused its discretion in admitting Rodriguez's prior conviction for attempted murder. *Hankins*, 180 S.W.3d at 181.

B. Rodriguez's 1986 aggravated assault conviction.

Rodriguez was convicted in 1986 for aggravated assault and was sentenced to two years in prison. (4 R.R. at 92-93, 100).[7]  Assuming, from the lack of evidence in the record, that Rodriguez finished his sentence in the adjudicated two years, his release date should have occurred in 1988; his release for this conviction preceded this trial by more than ten years. *Id*. Evidence of this conviction was only admissible if the trial court found that the "probative value of the conviction supported by specific facts and circumstances *substantially* outweighed its prejudicial effect." See Tex. R. Evid. 609(b) (emphasis added).

The *Theus* factors should have been applied when analyzing the probative value and prejudicial effect of a prior conviction. See *supra* at 12-13. Under the first factor in *Theus*, other than the type of offense and date of conviction, the State again provided no details about Rodriguez's 1986 conviction in support of its admission.

---

[7]  The State previously stated that Rodriguez's aggravated assault conviction was in 1986 but subsequently said the conviction occurred in 1996. (4 R.R. at 93, 100).  Appellant's counsel verified that it was in 1986. (4 R.R. at 93).

(4 R.R. at 92-93). An aggravated assault conviction being a violent crime and lacking in detail regarding an individual's credibility has little impeachment value while carrying a great risk of prejudice. *Theus*, 845 S.W.2d at 881. More likely, this conviction would, because of its limited applicability regarding the credibility of a witness, simply paint the picture of the witness as being a bad person. Thus, the first factor weighs against admission. As for the second factor under *Theus*, while Rodriguez's subsequent convictions could increase probative value as they may suggest a lack of reformation, "[a] lack of reformation does not necessarily lead to the conclusion that the probative value of a prior conviction substantially outweighs its prejudicial effect, but it may be considered within in the balancing process of Rule 609." *Hankins*, 180 S.W.3d at 181. The lapse between this conviction and his 1999 conviction is outside of the ten-year gap, thus diminishing the probative value of this conviction. *Id*. This factor does not weigh in favor of admission. Under the third factor in *Theus,* Appellant was charged with aggravated assault of a public servant. Aggravated assault and aggravated assault on a public servant are both crimes of violence and are nearly identical types of crimes. No facts were allowed regarding Rodriguez's conviction, rendering its admission extremely prejudicial and confusing for the jury. *Theus*, 845 S.W.2d at 881. Thus, this factor weighs significantly against admission.

Regarding the fourth and fifth *Theus* factors, the State called several witnesses and the Appellant, although he did not take the stand himself, also called several witnesses. (1 R.R. at 14-17). In this case, the State called several witnesses and the Appellant, although he did not take the stand himself, also called several witnesses. (1 R.R. at 14-17). Two of Appellant's witnesses (Rice and Cason) testified about an incident that occurred on the morning of the altercation between Appellant and Officer Martinez. (4 R.R. at 106, 122). All three of Appellant's witness testified that they saw Appellant and Officer Martinez arguing before they got into their altercation at the stairs. (4 R.R. at 77-78, 106-107, 110, 122-123). Rodriguez went into his cell, but he heard "a lot of noise like somebody was hitting metal," and went to the stairs near his cell. (4 R.R. at 78-79). When he got to the stairs he saw Appellant and Officer Martinez "standing on the middle of the stairs just before the landing…struggling to each other, like wrestling." (4 R.R. at 79). Rodriguez testified that he was standing about four feet from the scene where Officer Martinez and Appellant landed on the bottom of the stairs, which appeared to be closer than Appellant's other witnesses. (4 R.R. at 79-80). All three described the incident as more like wrestling, and all three testified that Appellant did not strike Officer Martinez. (4 R.R. at 83, 101, 110, 113, 133). Collectively, Appellant's witness were important, but Rodriguez was not the only defense witness in this case. Although Rodriguez testified to certain aspects of the incident that Appellant's other witnesses

20

could not from what appears to be the better vantage point, much of what Rodriguez testified to was corroborated by Rice and Cason. Thus, the fourth and fifth factors are neutral. See *Deleon*, 126 S.W.3d at 215.

Three of the five *Theus* factors weigh against admission and two factors are neutral. The prosecutor in this case did not explain how the prior conviction had any probative value, or that this probative value was supported by specific facts of circumstances, even though they bore the burden of doing so. *Leyba*, 416 S.W.3d at 572. The trial court's decision is void of any balancing test or analysis imposed by both Rule 609(a) and 609(b), despite the trial court's reading of Rule 609 into the record. (4 R.R. at 98). Rodriguez's prior conviction for aggravated assault does not relate to his credibility and is a similar crime of violence for which Appellant was charged. Appellant's other witnesses also testified to similar aspects of the altercation with Officer Martinez, although Rodriguez arguably had the better vantage point of what happened at the stairs. Considering all of the *Theus* factors, the probative value of the conviction did not substantially outweigh its prejudicial effect. See Tex. R. Evid. 609(b). The trial court thus abused its discretion in admitting Rodriguez's prior conviction for attempted murder. *Hankins*, 180 S.W.3d at 181.

C. Rodriguez's 1999 aggravated assault on a public servant conviction.

Rodriguez testified that he was convicted in 1999 for aggravated assault "on a police officer" and was sentenced to five years in prison. (4 R.R. at 93). As the State did not provide a release date for this conviction, it is assumed Rodriguez was released in 2004. *Id*. The testimony of Rodriguez took place on August 28, 2013; therefore, his 1999 conviction lies within the ten year window. (4 R.R. at 1). Evidence of a conviction less than ten years old is admissible if the trial court finds that its probative value outweighs its prejudicial effect. Tex. R. Evid. 609(a).

The *Theus* factors should have been evaluated prior to admission of this conviction. See *supra* at 12-13. Under the first factor in *Theus*, Rodriguez's prior conviction for aggravated assault on a public servant is a crime of violence and does not involve untruthfulness or deception, nor is it a type of crime that would ordinarily weigh heavily against a witness' veracity. See *Deleon*, 126 S.W.3d at 215. More likely, this conviction would, because of its limited applicability regarding the credibility of a witness, simply paint the picture of the witness as being a bad person. Thus, the first factor weighs against admission. Under the second factor in *Theus*, this conviction is within the ten year period of Tex. R. Evid. 609(a), and Rodriguez also has a conviction for DWI with a deadly weapon that occurred after this conviction. (4 R.R. at 74). The second factor favors admission. Under the third factor in *Theus*, Appellant was charged with aggravated assault of a public servant, the exact same crime as this conviction. No facts were allowed regarding Rodriguez's

22

conviction, rendering its admission extremely prejudicial and confusing for the jury. *Theus*, 845 S.W.2d at 881. Thus, this factor weighs significantly against admission.

Regarding the fourth and fifth *Theus* factors, the State called several witnesses and the Appellant, although he did not take the stand himself, also called several witnesses. (1 R.R. at 14-17). In this case, the State called several witnesses and the Appellant, although he did not take the stand himself, also called several witnesses. (1 R.R. at 14-17). Two of Appellant's witnesses (Rice and Cason) testified about an incident that occurred on the morning of the altercation between Appellant and Officer Martinez. (4 R.R. at 106, 122). All three of Appellant's witness testified that they saw Appellant and Officer Martinez arguing before they got into their altercation at the stairs. (4 R.R. at 77-78, 106-107, 110, 122-123). Rodriguez went into his cell, but he heard "a lot of noise like somebody was hitting metal," and went to the stairs near his cell. (4 R.R. at 78-79). When he got to the stairs he saw Appellant and Officer Martinez "standing on the middle of the stairs just before the landing…struggling to each other, like wrestling." (4 R.R. at 79). Rodriguez testified that he was standing about four feet from the scene where Officer Martinez and Appellant landed on the bottom of the stairs, which appeared to be closer than Appellant's other witnesses. (4 R.R. at 79-80). All three described the incident as more like wrestling, and all three testified that Appellant did not strike Officer Martinez. (4 R.R. at 83, 101, 110, 113, 133). Although collectively, Appellant's

23

witness were important, Rodriguez was not the only defense witness in this case. Although Rodriguez testified to certain aspects of the incident that Appellant's other witnesses could not from what appears to be the better vantage point, much of what Rodriguez testified to was corroborated by Rice and Cason. Thus, the fourth and fifth factors are neutral. See *Deleon*, 126 S.W.3d at 215.

Two of the five *Theus* factors weigh against admission and two factors are neutral. The prosecutor in this case did not explain how the prior conviction had any probative value, or that this probative value was supported by specific facts of circumstances," even though they bore the burden of doing so. *Leyba*, 416 S.W.3d at 572. The trial court's decision is void of any balancing test or analysis imposed by Rule 609(a), despite the trial court's reading of Rule 609 into the record. (4 R.R. at 98). Rodriguez's prior conviction for aggravated assault on a public servant does not relate to his credibility and is the exact same crime for which Appellant was charged. Appellant's other witnesses also testified to similar aspects of the altercation with Officer Martinez, although Rodriguez arguably had the better vantage point of what happened at the stairs. Considering all of the *Theus* factors, the probative value of the conviction did not outweigh its prejudicial effect. See Tex. R. Evid. 609(a). The trial court thus abused its discretion in admitting Rodriguez's prior conviction for aggravated assault of a public servant. *Hankins*, 180 S.W.3d at 181.

D. Appellant was harmed by the admittance of Appellant's prior convictions.

By allowing inadmissible testimony into evidence, the trial court committed errors that, when viewed cumulatively, affected Appellant's substantial rights[8]. Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had substantial and injurious effect or influence in determining the jury's verdict." *Hernandez*, 976 S.W.2d at 756, quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). "[I]f one cannot say, with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were *not* affected." *Id.* (emphasis added).

When performing a harm analysis, an appellate court should consider the entire record. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2001)). "In determining whether the error was harmless, the test is not whether a conviction could have been had without the improperly admitted evidence, but, rather, whether there is a reasonable possibility that the evidence might have contributed to the conviction or affected the punishment." *Battles v. State*, No. 11-05-00166-CR, 2006 Tex. App. LEXIS 3117 at *12 (Tex. App.—Eastland 2006, no pet.) (mem. op.),

---

[8]   Errors may be harmful in their cumulative effect, even if harmless when separately considered. *Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988)).

25

citing *Alexander v. State*, 740 S.W.2d 749, 765 (Tex. Crim. App. 1987). "Thus, if there is a reasonable possibility that the evidence might have contributed to either the conviction or punishment assessed, then the error in admission is not harmless error." *Id*. The State's case against Appellant included the testimony of several correctional officers and one unit infirmary nurse – none of whom testified that they witnessed the initial assault, other than the complaining witness, Martinez. (3 R.R. at 222; 4 R.R. at 66). While Appellant did not take the stand, he called three inmate witnesses to testify on his behalf. (4 R.R. at 75-136). Rodriguez testified that he was standing about four feet from the scene but did not witness Appellant striking Martinez; instead, "they were struggling [with] each other, […] wrestling." (4 R.R. at 79-80). Rodriguez stated that Appellant and Martinez fell down the stairs together, causing Appellant to land on top of Martinez. *Id*. Rodriguez maintained that Appellant did not accost Martinez. *Id*. Before going into Rodriguez's prior convictions, the State asked Rodriguez whether it was true that he had no great love for law enforcement before going over his prior convictions. While Rodriguez's testimony in parts was corroborated by Appellant's other witnesses, Appellant's defense rested on the jury believing the testimony of his witnesses over the State's witnesses. Similarly, the State's entire case rested on the jury believing the testimony of its witnesses over Appellant's witnesses. Finally, the State emphasized

26

Rodriguez's (and Appellant's other witnesses') prior criminal convictions during its

closing argument:

> Your common sense tell you who to believe and who not to believe. You heard from her three witnesses. You heard from a guy convicted of capital murder, ag robberies. You had one guy who had murder, ag robbery, ag assault, and a couple of other ones he was going so fast I couldn't even write them down.
>
> You heard from another guy who had also some horrible offenses. Let's see, what was his last one here? Oh, yeah, Mr. Cason, murder, ag assault with a deadly weapon, ag assault with a deadly weapon. Every one of them told you a story that made no sense.

(4 R.R. at 212).

As a result, the improper admission of Rodriguez's prior convictions had a

"substantial and injurious influence" on the jury's verdict. *King*, 953 S.W.2d at 271.

## **PRAYER**

Appellant Wesley Dotson prays that this Court reverse the trial court's judgment and remand this case to the trial court for a new trial. Appellant also prays for such other relief that this Court may deem appropriate.

<div style="margin-left: 45%;">

Respectfully submitted,
STATE COUNSEL FOR OFFENDERS

/s/ Nicholas Mensch
Nicholas Mensch
State Bar of Texas No. 24070262
P.O. Box 4005
Huntsville, Texas 77342-4005
(936) 437-5252
(936) 437-5279 (fax)
nicholoas.mensch@tdcj.texas.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this *Appellant's Brief* was served upon opposing counsel noted below, by one or more of the following: certified mail (return receipt requested), facsimile transfer, or electronic mail (e-mail), this 11th day of June, 2015.

Melinda Fletcher
Special Prosecution Unit
P. O. Box 1744
Amarillo, TX 79501
Facsimile no. 866-923-9253
E-mail address: mfletcher@sputexas.org

/s/ Nicholas Mensch
Nicholas Mensch
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i) because this brief contains 6291 words.

/s/ Nicholas Mensch
Nicholas Mensch
Attorney for Appellant